UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| James River Insurance Company, individually and a/a/o The Caravelle Resort Owners Association, Inc., | Civil Action No.: 4:17-cv-01738-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| William Kramer & Associates, LLC, | |
| Defendant. | |

This matter is before the Court on Plaintiff's motion to remand. *See* ECF No. 13. The Court grants the motion for the reasons herein.[1]

**Background**

Plaintiff commenced this action by filing a complaint in state court on May 4, 2017. *See* Complaint [ECF No. 1-1]. In its complaint, Plaintiff alleges it and three other companies insured property located in Myrtle Beach, South Carolina. *Id.* at ¶¶ 7, 9–10. Two companies provided primary insurance of $10 million, while Plaintiff and another company provided excess insurance of approximately $34 million. *Id.* at ¶¶ 9–10. The Myrtle Beach property sustained damage from Hurricane Matthew in October 2016, and Defendant was hired to investigate and administer the ensuing insurance claims.[2] *Id.* at ¶¶ 8, 12, 14. Ultimately, the $10 million primary coverage was exhausted, and Plaintiff and the other excess insurer agreed to pay approximately $13.5 million in excess

---

[1] Pursuant to Local Civil Rule 7.08 (D.S.C.), the Court may decide motions without a hearing. The Court has reviewed the parties' filings and determined a hearing in this matter is unnecessary.

[2] The insurance policy between Plaintiff and the insured designated Defendant as the assigned claims adjuster. *See* Complaint at ¶¶ 12–13 (quoting ECF No. 1-1 at p. 39). Defendant was appointed as the adjuster of all claims under Plaintiff's excess policy as well as the primary policies. *Id.* at ¶ 12.

coverage—consequently, Plaintiff paid over $6.7 million in excess coverage.[3] *Id.* at ¶¶ 1, 17. Plaintiff alleges that it is "entitled to unfettered access to [Defendant]'s adjustment file," but that Defendant "refuses to provide [Plaintiff] with access to its file," "presumably to conceal how the primary policy limits of $10,000,000 were squandered." *Id.* at ¶¶ 1, 19. Plaintiff asserts claims for injunctive relief and breach of contract, and it seeks as relief "[a]n injunction requiring [Defendant] to produce its entire file for the Hurricane Matthew Claim[.]" *Id.* at p. 8. Besides this injunctive relief, Plaintiff also seeks "all other actual, consequential, incidental, and compensatory damages to which [Plaintiff] is entitled." *Id.*

Defendant removed the action to this Court asserting federal diversity jurisdiction was available under 28 U.S.C. § 1332.[4] *See* ECF No. 1. Plaintiff filed the instant motion to remand, and Defendant filed a response in opposition.[5] *See* ECF Nos. 13 & 18. Additionally, the Court entered a Sua Sponte Text Order to Show Cause stating:

> Defendant bases federal jurisdiction upon diversity jurisdiction pursuant to § 1332. However, the Plaintiff did not specify any monetary amount of damages or clearly allege the jurisdictional amount in the Complaint, and the Defendant's notice of removal fails

---

[3] As consideration, Plaintiff obtained a release and assignment of rights from the insured property owner. Complaint at ¶ 18.

[4] At the same time it filed the notice of removal, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 4. Because it is remanding this case for lack of subject matter jurisdiction, the Court lacks jurisdiction to rule on the motion to dismiss. *See, e.g.*, *Burns v. Friedli*, 241 F. Supp. 2d 519, 526 & n. 5 (D. Md. 2003) (explaining the court lacked jurisdiction to rule on the defendants' Rule 12(b)(6) motions because it was remanding the case for lack of diversity jurisdiction).

[5] Defendant subsequently filed a "Supplemental Brief in Support of Jurisdiction," and docketed it as a response in opposition to Plaintiff's motion to remand. *See* ECF No. 21. Plaintiff filed a motion to strike this document; Defendant did not respond to the motion to strike. *See* ECF No. 22. The Court will grant the motion to strike because, as Plaintiff points out, Defendant did not have a right to file it and did not seek leave of Court to do so. The Local Rules permit a party opposing a motion to file a response within fourteen days of service of the motion, *see* Local Civ. Rule 7.06 (D.S.C.), but they do not permit an additional/supplemental response, as Defendant has done here. In any event, Defendant's supplemental response does not reveal any content that would affect the Court's decision to remand.

> to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount. Additionally, Plaintiff has filed a motion to remand arguing the amount in controversy is not met. Thus, the amount in controversy is unclear, and this Court may lack diversity jurisdiction.

ECF No. 16. The parties filed responses to the Court's show cause order. *See* ECF Nos. 18 & 20.

## **Discussion**

Plaintiff argues the Court must remand this case because the amount in controversy is less than $75,000, and therefore diversity jurisdiction is lacking. The Court agrees.

The party seeking to remove a case to federal court bears the burden of establishing federal subject matter jurisdiction. *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Thus, Defendant bears the burden to establish federal jurisdiction is proper in this case. "Because removal jurisdiction raises significant federalism concerns," the Court "must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." *Id.* (internal citation omitted).

State court defendants may remove a civil action to federal district court if it has original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). District courts have original jurisdiction over actions between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). "The removability of a case 'depends upon the state of the pleadings and the record at the time of the application for removal.'" *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (quoting *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906)). "If diversity of citizenship, under 28 U.S.C. § 1332(a), provides the grounds for removal, then 'the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy.'" *Id.* (quoting 28 U.S.C. § 1446(c)(2)). "If a complaint does not allege a specific amount

3

of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Id.* (internal quotation marks and alteration omitted). "[A] claim not measurable in 'dollars and cents' fails to meet the jurisdictional test of amount in controversy." *McGaw v. Farrow*, 472 F.2d 952, 954 (4th Cir. 1973).

When a plaintiff seeks injunctive relief, "'the amount in controversy is measured by the value of the object of the litigation.'" *Francis*, 709 F.3d at 367 (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)); *see also JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) ("[R]equests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy."). The object may be valued from either party's perspective—i.e., what the plaintiff stands to gain, or what the defendant stands to lose. *See Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002); *Gov't Emp. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964). In other words, the Court must consider the monetary effect that a judgment would have on either party to the litigation. *Dixon*, 290 F.3d at 710. The Fourth Circuit has explained that courts "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax*, 624 F.3d at 639.

Here, the object of the litigation is Defendant's claims adjustment file—more specifically, an injunction requiring Defendant to produce this file. Defendant has not carried its burden to prove the value of the file exceeds $75,000. Whether the file will lead to unfavorable evidence of Defendant's adjustment practices is purely speculative at this time, and if such evidence existed, it would be the basis for a subsequent, *different* lawsuit. The only monetary benefit or detriment that a judgment (i.e., an injunction) in *this* lawsuit will have is the cost of producing the file. *See DiTolla v. Doral Dental*

4

*IPA of New York*, 469 F.3d 271, 276 (2d Cir. 2006) (observing that when "the remedy sought is equitable, and not legal, a monetary value cannot be easily assigned"). The benefit to Plaintiff of having the file is purely speculative at this time because its contents are unknown to both Plaintiff and the Court, and the cost to Defendant of producing it (i.e., sending the original or photocopying/scanning a copy) is negligible. *See Grubb v. Jos. A. Bank Clothiers, Inc.*, 2005 WL 1378721, at *9 (S.D.W. Va. June 2, 2005) ("In the case of injunctive relief, this burden requires the defendant to quantify the cost of compliance."). If the Court granted the requested injunctive relief, Plaintiff would simply recover the adjustment file, and Defendant would simply bear the cost of producing it. In short, there is nothing that suggests how much Plaintiff would gain and Defendant would lose as a result of the requested injunctive relief. *See, e.g.*, *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799–801 (7th Cir. 2003) (holding the plaintiff's demand for "an accounting and unredacted copies of the trust documents" did not satisfy the amount-controversy-requirement, and concluding that "[n]ot until it becomes evident that the information in these trust instruments is worth more than $75,000 should anyone knock on the federal court's door"); *DiTolla*, 469 F.3d at 274–77 (citing *Macken*; finding that although the plaintiff alleged in his complaint that the defendants "'fraudulently bilked'" a healthcare reimbursement pool, it was "mere speculation" as to whether damages would exceed the jurisdictional requirement; and upholding the district court's conclusion that "because [the plaintiff] sought only information, and the value of that information could not be estimated, [the defendants] had failed to meet their burden of establishing federal jurisdiction"); *Sierp v. DeGreen Partners LP*, 2015 WL 464338, at *3 (D. Ariz. Feb. 4, 2015) ("Plaintiffs simply seek to inspect [the defendants'] records. Although they may hope or even expect to eventually bring additional claims for concrete sums, the [c]ourt cannot say with any certainty that they will do so."); *Ditolla v. Doral Dental IPA of New York, LLC*, 2006 WL 5618179, at

5

*3 (E.D.N.Y. Apr. 21, 2006) ("Plaintiff in the instant case, like the plaintiff in *Macken*, seeks information only. Because Plaintiff has not, and apparently cannot estimate the value of this information, Defendant fails to meet its burden of establishing jurisdiction."); *Doe v. Montgomery Cty.*, No. 8:01-cv-02267-DKC, at ECF No. 22 pp. 9–10 (D. Md. Mar. 19, 2002) (finding an investigative file sought from the defendants was the object of the litigation and did not satisfy the amount-in-controversy requirement), *aff'd*, 47 F. App'x 260, 261 (4th Cir. 2002).

Defendant attempts to prove the amount in controversy is satisfied by relying on Plaintiff's allegations that the $10 million primary coverage was "squandered," and that Plaintiff had to pay over $6.7 million in excess coverage.[6] *Compare* Def.'s Resp. in Opp. [ECF No. 18] at pp. 1–3, 7–8, *with* Complaint at ¶¶ 1, 17. However, these allegations simply explain the reason why Plaintiff wants Defendant's adjustment file—to determine whether such "squandering" even happened. Significantly, Plaintiff has *not* alleged that Defendant breached the contract by misadjusting the Hurricane Matthew claim; instead, Plaintiff simply alleges that Defendant's breach is its refusal to provide access to the

---

[6] Defendant asserts that even 1% of the $10 million primary insurance ($100,000) or 1.2% of the $6.7 million excess insurance paid by Plaintiff ($81,344) would support an amount in controversy of $75,000. ECF No. 18 at p. 7. Such arbitrary percentages (apparently pulled out of thin air) highlight the speculative nature of Defendant's argument—what if only 0.001% (less than $75,000) was at issue? No percentage can be known without knowledge of the file.

Similarly, Defendant makes a tortured analogy comparing Plaintiff's demand for the adjustment file to a demand for the secret recipe of Coca-Cola. *See id.* at pp. 2–3. While the value of Coke is beyond obvious without needing to see the actual recipe, *see McCoy v. Norfolk S. Ry. Co.*, 858 F. Supp. 2d 639, 650 (S.D.W. Va. 2012) (stating a court should not "leave its common sense behind" in determining the amount in controversy), the contents of Defendant's adjustment file are not.

Finally, Defendant submits an affidavit from William Kramer, who asserts one of the primary insurers owes Defendant $111,929.68 and is withholding this payment because of "the threat of litigation" by Plaintiff and/or the other excess insurer. *See* ECF No. 18-1 at ¶¶ 6–7. As Plaintiff correctly points out, *see* ECF No. 20 at p. 3, such an argument is tantamount to a counterclaim and does not affect the Court's jurisdictional amount analysis. *See R.L. Jordan Oil Co. v. Boardman Petroleum, Inc.*, 23 F. App'x 141, 145 (4th Cir. 2001) ("[I]t appears, although we have not decided, that [the defendant]'s counterclaim may not be used in calculating the amount in controversy.").

adjustment file, and that Plaintiff's damages are the time and expense of filing suit to recover the file.[7]

*See* Complaint at ¶¶ 27–28. Plaintiff clarifies this point in its response to the Court's show cause order:

> James River only seeks access to the adjusting file and consequential damages for having to file suit to obtain the file.[8] At this time James River seeks nothing more.
> . . . .
> At this time, James River is only seeking access to its adjusting file; James River is not asserting any claims for wrongful adjustment or other tortious conduct by WKA.

ECF No. 20 at pp. 2, 4. In sum, Defendant has not shown by a preponderance of the evidence that production of the adjustment file and Plaintiff's filing this lawsuit exceed $75,000.[9]

## **Conclusion**

The Court finds the amount in controversy does not satisfy the $75,000 jurisdictional requirement. Thus, the Court lacks subject matter jurisdiction over this case and must remand it to state court. Accordingly, the Court **GRANTS** Plaintiff's motion to remand [ECF No. 13] and **REMANDS** this case to the Court of Common Pleas for Horry County, South Carolina. The Court **DIRECTS** the Clerk to mail a certified copy of this Order to the clerk of the Horry County Court of Common Pleas.

Furthermore, the Court **GRANTS** Plaintiff's motion to strike [ECF No. 22]. The Court lacks jurisdiction to rule on Defendant's motion to dismiss [ECF No. 4] filed pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS SO ORDERED.**

---

[7]   *See generally S. Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012) ("The elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach.").

[8]   The $75,000 jurisdictional requirement is "exclusive of interest and costs." 28 U.S.C. §1332(a).

[9]   Because the Court concludes the amount-in-controversy requirement is not satisfied, it need not address the parties' remaining arguments concerning the citizenship of Defendant and the sufficiency of the notice of removal.

Florence, South Carolina  
February 14, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge